UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:12-CR-124 JD |
| | ) | Related Case No. 3:14-CV-1683 JD |
| MARQUIS KASIMIR BROADWAY | ) | |

## OPINION AND ORDER

The sole issue currently before the Court is whether defense counsel should be permitted to take the testimony of the prosecuting attorney for purposes of proving a claim raised under 28 U.S.C. § 2255. However, before answering this question, the Court must provide some context.

On March 11, 2013, the day Defendant Marquis Kasimir Broadway's jury trial was set to begin, Mr. Broadway entered into a plea agreement [DE 38-1] whereby he pled guilty to carjacking, in violation of 18 U.S.C. § 2119(1) (Count 1), and carrying and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2). The remaining charges of the Indictment, possession of a firearm as a juvenile in violation of 18 U.S.C. § 922(x) (Count 3), unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) (Count 4), possession of a stolen firearm in violation of 18 U.S.C. § 922(j) (Count 5), and distribution of marijuana in violation of 21 U.S.C. § 841(a)(1) (Count 6),[1] were dismissed pursuant to the plea agreement. Mr. Broadway was sentenced to 162 months of imprisonment, which was comprised of 78 months on the carjacking charge (at the low end of the advisory guidelines range applicable to that count), followed by a consecutive 84 months' imprisonment on the § 924(c) charge (the statutory mandatory minimum term of imprisonment because the gun was admittedly brandished) [DE 60]. Thereafter, Mr. Broadway filed a timely petition pursuant

---

[1] The undersigned had severed Count 6 from the remaining charges before Mr. Broadway pled guilty to Counts 1 and 2.

to 28 U.S.C. § 2255 [DE 63], asking the Court to vacate one of his convictions, run the sentences concurrently, or allow him to renegotiate his plea agreement [DE 63 at 13].

Since the time of the petition's filing, Mr. Broadway has been appointed counsel, Mr. David Wemhoff, to represent him, and the case was set for an evidentiary hearing after briefing time was afforded. However, at the outset of the evidentiary hearing, Mr. Wemhoff communicated for the first time that he may need to call the prosecuting attorney, AUSA Donald Schmid, with respect to one of Broadway's claims[2]—that is, his trial counsel, Mr. Thomas Strickler, was allegedly ineffective by failing to advise Mr. Broadway of a binding plea offer provided by the government for 120 months' imprisonment in exchange for a plea of guilty to any one of the remaining gun charges (Counts 3-5).

If Mr. Strickler failed to tell his client about a plea offer, then his representation is deficient. *See Groves v. United States,* 755 F.3d 588, 592 (7th Cir. 2014) (citing *Missouri v. Frye*, --- U.S. --, 132 S.Ct. 1399, 1408–1410, 182 L.Ed.2d 379 (2012)) (defense counsel have a duty "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."); *Lafler v. Cooper*, --- U.S. ---, 132 S.Ct. 1376, 1387, 182 L.Ed.2d 398 (2012) ("[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it")). And the parties agree that in order to prove this claim, Mr. Broadway must also establish prejudice by showing a

---

[2] Mr. Wemhoff was also considering whether to call the undersigned as a witness, but he has since decided that doing so will not be necessary [DE 83], and thus, there is no reason for the undersigned to consider whether recusal may be appropriate in light of the fact that federal courts can determine whether there existed a reasonable probability of whether a court would not have prevented the plea's being accepted or implemented. *See, e.g., Missouri v. Frye*, --- U.S. ---, 132 S.Ct. 1399, 1410, 182 L.Ed.2d 379 (2012) (indicating that "[i]t can be assumed in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain.").

reasonable probability that several things would have happened, that is: (1) the defendant would have accepted the earlier plea offer; (2) the prosecution wouldn't have cancelled the plea offer; (3) the trial court wouldn't have refused to accept the binding plea under Fed. R. Crim. P. 11(c)(3); and, (4) the end result would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time (hereinafter "factors"). *Missouri v. Frye*, --- U.S. ---, 132 S.Ct. 1399, 1409, 182 L.Ed.2d 379 (2012).

To support his claim, Mr. Broadway provided an email dated March 1, 2013, from AUSA Schmid to Mr. Strickler which stated in relevant part:

> If the defendant provides to the government a signed plea agreement by Monday, March 4, 2013 and enters his plea in Court by March 6, 2013, the government will recommend a third level reduction for timely acceptance of responsibility under Guideline § 3E1.1(b), assuming he continues to fully manifest acceptance of responsibility through the date of his sentencing []  The plea agreement requires a guilty plea to Counts 1 and 2 and a dismissal of the remaining counts 3 through 6 . . . .
> *If he does not want to plead to Counts 1 and 2 (re carjacking, which I prefer), I am willing to accept a plea to any of the firearms charges (E.g. Count 3, 4 or 5) but MKB would have to agree to a binding joint sentencing recommendation of 10 year* [sic] *imprisonment. The carjacking plea is a better deal for him.*

[DE 63 at 16] (italics in original).

Defense counsel suggests that the timelines explicitly stated in the email apply only to the referenced plea agreement and don't equally apply to the alternative plea agreements, thus creating some ambiguity about when those plea offers lapsed. The government's filing of July 1, 2015, seems to suggest that the binding plea was open at least through March 6, 2013, and maybe through March 8, 2013 [DE 81 at 15]. However, the government's filing of July 30, 2015, seems to change the deadline for accepting the binding plea to March 4, 2013 [DE 81 at 15]. Regardless of when the binding plea actually lapsed, the government admits to having made the binding plea offer, *id.*, and it has acknowledged that it has no intent in arguing that it would

3

have attempted to withdraw the binding agreement had it been accepted [DE 82]. In reply, defense counsel has clarified that the sole argument in support of its need to call AUSA Schmid as a witness in this case, is to determine when the binding plea offer actually lapsed [DE 87].[3]

Mr. Wemhoff acknowledges that in order to call the prosecutor to testify in the same case being prosecuted, the Court should consider whether the prosecutor is the sole person with knowledge of the vital facts at issue [DE 87], in light of the advocate-witness rule which bars counsel from acting as both an advocate and a witness in a single proceeding except under special circumstances.[4] *See United States v. Watson*, 87 F.3d 927, 932 (7th Cir. 1996) (citing *United States v. Marshall*, 75 F.3d 1097, 1106 (7th Cir. 1996)); *United States v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983) (citing *United States v. Johnston*, 690 F.2d 638, 644 (7th Cir. 1982)). While the interplay of the advocate-witness rule in the context of § 2255 proceedings appears to be a somewhat unique situation, what emerges in general from Seventh Circuit cases is that it is a situation to be avoided if possible but counsel's testimony will be permitted in extraordinary circumstances and for compelling reasons, usually where the evidence is not otherwise available. *See Johnston*, 690 F.2d at 644. In those circumstances, it is often suggested, however, that counsel withdraw from further participation in the case. *Id*. Thus, in exercising its discretion to allow or forbid an attorney to also appear as a witness, the court should examine the goals sought to be served by the rule against dual appearances and determine whether the particular situation

---

[3] Mr. Wemhoff had initially contemplated whether AUSA Schmid's testimony would be offered to show that the Court wouldn't have refused to accept the binding plea [DE 83 at 4-5]. However, Mr. Wemhoff now makes clear that he wishes to call AUSA Schmid only to confirm when the binding plea offer lapsed [DE 87 at 2]. This makes sense since certainly AUSA Schmid is not the only local attorney capable of testifying about the Court's practices with acceptance of binding plea agreements, even under the specific circumstances presented by Broadway's sentencing. And as such, it is unlikely that any "extraordinary circumstances" or "compelling reasons", *see infra*, would support AUSA Schmid's need to testify in this respect.

[4] The rule is reflected in Indiana's Rules of Professional Conduct 3.7, which has been adopted in the United States District Court for the Northern District of Indiana pursuant to Local Rule 83-5(e).

4

confronting the court requires that the testifying attorney withdraw as counsel. *Morris*, 714 F.2d at 671. The recognized rationales for forbidding counsel to appear as a witness are: (1) it eliminates the possibility that the attorney will not be a fully objective witness; (2) in the case of a government attorney, the rule eliminates the possibility that the prestige of the government will artificially enhance the attorney's credibility as a witness; (3) it reduces the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments; (4) it reflects a broad concern that the administration of justice not only be fair, but also appear fair; and, (5) it prevents a government attorney, who is "expected to adhere to the highest standards of professional behavior and to be worthy of public trust and confidence" from running "the risk of impeachment or otherwise being found not credible," and thereby disgracing his office. *Id*. at 671-72 (citations omitted).

Most of these considerations have little weight when defense counsel seeks to have the prosecuting attorney testify during a § 2255 post-trial/conviction hearing as to the single issue concerning the date upon which a binding plea offer lapsed. For instance, the undersigned is unlikely to be confused by the dual appearance of the U.S. Attorney as advocate and witness, nor is it likely the U.S. Attorney's credibility as a witness in the eyes of the undersigned judge (as opposed to a jury) will be enhanced by his role as counsel. And although it is true that a concern with the appearance of justice is more pronounced when "the testifying attorney represents the prosecuting arm of the federal government," *Johnston*, 690 F.2d at 643, there is little risk that government counsel would not be fully objective or risk impeachment during a post-conviction evidentiary hearing concerning the limited issue at hand.

But even assuming the goals sought to be served by the rule against dual appearances do not particularly weigh against allowing AUSA Schmid's providing testimony under the instant

circumstances, the hurdle that defense counsel has not overcome is the presenting of "extraordinary circumstances" or "compelling reasons" for why AUSA Schmid must clarify whether the binding plea offer lapsed on March 4th, 6th, or 8th. Mr. Wemhoff has offered no argument for why the difference of a few days for the offer's expiration is critical, such that there are facts to suggest Mr. Broadway would have accepted the binding plea offer had it been open for eight days (or even until the trial's start) as opposed to only four days. In other words, the primary point of contention is whether Mr. Broadway would have preferred the binding plea offer (assuming it had been communicated to him) over the plea agreement he ultimately accepted, not the exact time frame in which he would have had to accept it.

Since the defense failed to provide the requisite showing, the Court denies defense counsel's request to call AUSA Schmid to testify about the date upon which the binding plea offer lapsed. Thus, the Court need not consider whether bifurcation of the evidentiary hearing or substitution of the prosecuting attorney is necessary, since there will be no dual appearance of the U.S. Attorney as advocate and witness. The Court can reconsider this ruling should a development of the facts establish some relevance to this limited dispute.

On a somewhat related matter, today the Court received a document filed by Mr. Broadway titled "Motion for Interrogatories" directed at Mr. Strickler [DE 88]. This document is ordered STRICKEN from the record because Mr. Broadway is represented by counsel and has no right to dual representation, and these interrogatories are unnecessary as there is no question that Mr. Wemhoff intends to have Mr. Strickler testify at the evidentiary hearing on Mr. Broadway's § 2255 petition.[5] The Court will be contacting counsel shortly to schedule a time for the evidentiary hearing to be held. Counsel shall email the Court their intended witness and

---

[5] In fact, Mr. Strickler was present to testify at Mr. Broadway's evidentiary hearing as originally scheduled, until it had to be continued so counsel could brief the issue raised for the first time at the hearing, as now addressed herein.

exhibit lists **no less than five business days** before the hearing, to the following email address: deguilio_chambers@innd.uscourts.gov.

    SO ORDERED.

    ENTERED: August 18, 2015

                                        /s/ JON E. DEGUILIO  
                                        Judge  
                                        United States District Court