UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:12-CR-124 JD |
| | ) | Related Case No. 3:14-CV-1683 JD |
| MARQUIS KASIMIR BROADWAY | ) | |

## OPINION AND ORDER

After pleading guilty, Marquis Kasimir Broadway was convicted of carjacking, in

violation of 18 U.S.C. § 2119(1) (Count 1), and carrying and brandishing a firearm during a

crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2). On July 29, 2013, Mr.

Broadway was sentenced to 162 months of imprisonment, comprised of 78 months on the

carjacking charge (at the low end of the advisory guidelines range applicable to that count),

followed by the consecutive 84 months on the § 924(c) charge (the statutory mandatory

minimum term of imprisonment because the gun was admittedly brandished) [DE 60].

Mr. Broadway did not file a direct appeal, but filed a timely petition pursuant to 28

U.S.C. § 2255 [DE 63], asking the Court to either vacate one of his convictions, run the

sentences concurrently, or to allow him to renegotiate his plea agreement [DE 63 at 13]. He

attached a letter to the petition, written by his retained trial counsel, Mr. Thomas Strickler, in

which it is indicated in relevant part that Mr. Strickler advised Mr. Broadway that his sentence

would not exceed seven years [*Id.* at 17]. The government filed a response [DE 76], and

Attorney David Wemhoff was appointed on behalf of Mr. Broadway [DE 72]. Mr. Wemhoff

filed a reply in support of Mr. Broadway's petition arguing only that an evidentiary hearing was

warranted [DE 75]. Accordingly, the Court held an evidentiary hearing on September 4, 2015,

during which counsel presented their evidence and argument.[1]  Having carefully considered the entire record and for the reasons set forth below, the Court DENIES Mr. Broadway's petition.

## I. BACKGROUND

### A.    The § 2255 Petition

In Mr. Broadway's original § 2255 *pro se* petition, he alleged that his retained trial counsel, Mr. Thomas Strickler, provided ineffective assistance in the following ways: (1) by advising him to consent to the transfer of his delinquency proceedings[2] to an adult criminal prosecution; (2) by not providing Mr. Broadway with a copy of his presentence investigation report (PSR) prior to sentencing; (3) by advising Mr. Broadway that he would receive a sentence of no more than 84 months' imprisonment (which was the mandatory minimum sentence for Count 2); and (4) by failing to advise Mr. Broadway of a binding plea offer the government made for 120 months' imprisonment in exchange for a plea of guilty to any one of the remaining gun related charges (Counts 3-5).  Mr. Broadway also alleged that his convictions for both carjacking and a § 924(c) offense violated the Double Jeopardy Clause since the charges originated from a single incident.[3]

---

[1] Mr. Broadway's evidentiary hearing was originally scheduled for July 2, 2015, however, it had to be continued so defense counsel could brief an issue raised for the first time on the day of the hearing—that is, whether the defense could call the prosecuting Assistant United States Attorney as a witness to determine when an alleged previous plea offer had lapsed [DE 87].  However, the Court denied the defense's request by way of a written order [DE 89], and ultimately, the defense withdrew any claim relating to the existence of a previous plea offer.

[2] Mr. Broadway was originally charged in case 3:12-cr-104 as a juvenile by way of an information which contained the same six substantive charges as the indictment in this case, except under the rubric of juvenile delinquency. 18 U.S.C. § 5032.

[3] The facts upon which Mr. Broadway pled guilty reveal that Mr. Broadway violently took a vehicle from two individuals after poking one of the victims in the head with a loaded (and stolen) firearm and audibly chambering a round, and was then caught by police driving the stolen vehicle at which point he claimed purchasing the car on Craig's List.

Mr. Wemhoff affirmed at the beginning of the evidentiary hearing that Mr. Broadway was pursuing only one of his original claims—that Mr. Strickler provided ineffective assistance by advising Mr. Broadway that his sentence would not exceed seven years.[4]  For purposes of the record, Mr. Wemhoff explicitly dismissed each of the remaining § 2255 claims.  The Court accepted the dismissal of those claims and now proceeds to consider the remaining issue.

**B.** **The Arraignment and Transfer**

By way of history, after being charged as a juvenile in case 3:12-cr-104, on September 21, 2012, Mr. Broadway was arraigned before the undersigned.  During the arraignment, Mr. Broadway was represented by his then retained counsel, Mr. Andre Gammage, and was advised of the charges, the elements of each charge, and the possible penalties of each charge whether tried as a juvenile or an adult[5].  Mr. Broadway affirmed under oath that he understood the charges and the possible penalties that he faced, and that he was satisfied with the representation of Mr. Gammage.  Eventually, Mr. Broadway terminated Mr. Gammage and hired new trial counsel, Mr. Thomas Strickler, and a hearing was set on the government's motion for mandatory transfer to adult prosecution.  Mr. Broadway, his mother, and Mr. Strickler, consented to adult prosecution without a transfer hearing, and acknowledged that Mr. Broadway had been advised of his charges and rights consistent with 18 U.S.C. § 5032 [case 3:12-cr-104, DE 34].  On November 16, 2012, the Court held a hearing during which Mr. Broadway was placed under oath

---

[4] For the first time, Mr. Wemhoff argued during the evidentiary hearing that the claim implicates Mr. Broadway's due process rights because he did not knowingly enter into the plea since he was not advised by competent counsel. While the Court analyzes the claim under *Strickland v. Washington*, 466 U.S. 668 (1984), regardless of how the claim is characterized, the result is the same based on the factual determinations.

[5] Mr. Broadway does not contend that during this hearing he was improperly advised as to the maximum possible penalties.

and explicitly confirmed his understanding of his rights and the penalties of the charges whether tried as a juvenile or as an adult. The Court accepted his consent.[6]

## C.    The Plea

*The Plea Agreement*

On the day his jury trial was set to begin, March 11, 2013, Mr. Broadway decided to plead guilty. Mr. Broadway entered into a plea agreement, wherein he agreed to plead guilty to Counts 1 and 2 of the Indictment charging him with carjacking, in violation of 18 U.S.C. § 2119(1) (Count 1), and carrying and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2).

In his plea agreement, Mr. Broadway represented that he had told his attorney, Mr. Strickler, about the facts and circumstances surrounding the charges, that he believed Mr. Strickler was fully informed as to the nature of the charges, and that Mr. Strickler had counseled Mr. Broadway about his possible defenses [DE 38 at ¶ 5]. Mr. Broadway further represented that he believed Mr. Strickler had "done all that anyone could do to counsel and assist [him]," and Mr. Broadway confirmed that he was offering his plea of guilty "freely and voluntarily and of [his] own accord" and no promises were made to him other than those contained in the plea agreement. *Id*. at ¶¶ 11-12.

With respect to the penalties faced by Mr. Broadway, the plea agreement indicated in relevant part that Mr. Broadway faced a penalty of "a maximum of 15 years imprisonment" for the carjacking offense, and "a mandatory minimum of 7 years up to a maximum of life imprisonment (consecutive to any other sentence of imprisonment)." *Id*. at ¶ 9(c). Mr. Broadway

---

[6] In an order dated November 19, 2012, the Court determined that even absent defendant's consent, transfer was mandatory under 18 U.S.C. § 5032, given Mr. Broadway's age, the charges he faced, and his criminal history [case 3:12-cr-104, DE 36].

also "agree[d] that the Court ha[d] jurisdiction and authority to impose any sentence within the statutory maximum set for [his] offense(s) as set forth in this plea agreement" and that his "sentence [would] be determined in accordance with the statutory maximums and mandatory minimums listed above." *Id*. at ¶ 9(d). The agreement also contained a waiver provision which stated, in part:

> I expressly waive my right to appeal my conviction, my sentence and any restitution order to any Court on any ground, including any claim of ineffective assistance of counsel. I also agree not to contest my conviction, my sentence, any restitution order imposed, or the manner in which my conviction, the sentence or restitution order was determined or imposed on any ground including any alleged ineffective assistance of counsel in any appeal under Title 18, United States Code, Section 3742 or in any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

*Id*. at ¶ 9(d).

*The Change of Plea Hearing*

At the change of plea hearing, Mr. Broadway was placed under oath [DE 77]. Initially, Mr. Strickler advised the Court that he needed additional time to consider the plea agreement because Mr. Broadway did not realize that the § 924(c) charge carried a statutory mandatory minimum of seven years, rather than five years, on account of Mr. Broadway's having brandished the weapon [DE 77 at 5]. After an approximately fifty-five minute recess, Mr. Broadway chose to proceed with his change of plea hearing. During the hearing, Mr. Broadway confirmed that he read, understood, and reviewed the plea agreement with his attorney. *Id*. at 32. He also confirmed that there were no promises outside the plea agreement that he was relying on to plead guilty, and that he was satisfied with Mr. Strickler's representation. *Id*. at 14, 32.

Before changing his plea to guilty on Counts 1 and 2, Mr. Broadway was advised of the nature of the charges [DE 77 at 14-29] and the possible penalties [DE 77 at 29-31]. With respect to the maximum penalties for imprisonment, the government stated that "Congress has said that

the maximum that Mr. Broadway could receive – the absolute maximum would be, on Count 1, up to fifteen years' imprisonment" and "[w]ith respect to the 924(c) count in Count 2, . . . carrying a firearm during a crime of violence and brandishing that firearm, Congress has said that the minimum that a person can receive, the mandatory minimum, is seven years, and because Congress has set no maximum, the courts have interpreted that as a possible maximum of up to life." *Id*. at 29-30. The undersigned then specifically confirmed that the 924(c) mandatory minimum term of seven years ran consecutive to the sentence in Count 1. *Id*. at 30. Following this exchange, Mr. Broadway acknowledged his understanding of the possible penalties. *Id*. at 31.

Mr. Broadway also confirmed that he and Mr. Strickler had discussed the sentencing guidelines and that he understood the actual guideline range could not be determined until probation prepared a PSR [DE 77 at 37-38]. Mr. Broadway explicitly acknowledged that he knew his sentence could be greater or lesser than the advisory guideline sentencing range and could be different than predicted by Mr. Strickler:

> THE COURT: Do you understand that the sentence ultimately imposed may be different from any estimate that Mr. Strickler has given you?
> THE DEFENDANT: What do you mean "different," like from --
> THE COURT: Any sentence that I give you might not be the same sentence that Mr. Strickler predicts I might give or he's telling you that you might qualify for. My sentence might be higher or it might be lower. He can only make an estimate of what he thinks what your sentence might be.
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that?
> THE DEFENDANT: Yes.

[DE 77 at 38-39].

The undersigned twice informed Mr. Broadway that the probation department would prepare a PSR and that Mr. Broadway and his attorney would have the opportunity to review the

PSR and indicate whether any errors, including miscalculations of the guidelines, were contained in the report [DE 77 at 38, 46]. Again, Mr. Broadway confirmed that he understood these things.

Finally, the undersigned specifically drew Mr. Broadway's attention to the waiver provision located in paragraph 9(d) of his plea agreement and explained to Mr. Broadway that if he was found guilty after a trial he would have the right to appeal with the assistance of counsel, but by pleading guilty he would not be able to appeal his conviction or sentence to any court on any ground—and Mr. Broadway affirmed that he understood what his waiver entailed [DE 77 at 36, 41]. In fact, Mr. Broadway confirmed that he understood all of the terms of his plea agreement and that he was entering the plea voluntarily. *Id*. at 32.

**D.      The Sentencing Hearing**

At the sentencing hearing Mr. Broadway was placed under oath. Both he and Mr. Strickler confirmed that they had reviewed and discussed the final PSR prior to the sentencing hearing [DE 78 at 4-5].

The undersigned reiterated the maximum penalties for each count [DE 78 at 12-13]. In addition, the undersigned advised Mr. Broadway and counsel that the guideline range for Count 1 was 78-97 months of imprisonment,[7] with Count 2 having a guideline sentence equal to the mandatory minimum term required by statute, or 84 months, "to be served consecutively to any sentence imposed on Count 1." [DE 78 at 13]. After announcing the guideline calculations (which were properly reflected in the PSR, [DE 52 at ¶ 95]), Mr. Strickler confirmed that the defense had no objection to the PSR [DE 78 at 15], albeit Mr. Strickler was still recommending a

---

[7] In calculating the guidelines, the Court declined to impose a six level enhancement, as pursued by the government, under guideline section 2B3.1(b)(2)(B) for Mr. Broadway's use of the firearm to commit the carjacking. The Court reasoned that 18 U.S.C. § 924(c) already punished Mr. Broadway's admitted possession, use, and brandishing of the firearm by employing a mandatory minimum sentence of seven years, and application note 4 of guideline section 2K2.4 prohibited a guideline's increase in the sentence for an underlying offense "for the same weapon and the same conduct that underlie the § 924(c) conviction." *See United States v. Katalinic*, 510 F.3d 744, 747 (7th Cir. 2007).

sentence of only 84 months total imprisonment which was consistent with his recommendation in his sentencing memorandum [DE 59]. Even after the Court announced the proposed sentence of 162 months of imprisonment (which "consist[ed] of 78 months on Count 1, at the low end of the advisory guideline range, and a term of 84 months on Count 2, the 924(c) offense, to be served consecutively to the sentence imposed on Count 1 as required by the statute"), Mr. Strickler advised that he had no objection to the sentence [DE 78 at 34, 43-44], which was then imposed.

Prior to completing the sentencing hearing, the Court referred Mr. Broadway to paragraph 9(d) of his plea agreement [DE 78 at 44] and confirmed he understood the terms of his appeal waiver. Mr. Broadway did not file a direct appeal, but he has now petitioned this Court to vacate his sentence under 28 U.S.C. § 2255.

**E.    The § 2255 Evidentiary Hearing**

At the evidentiary hearing, defense counsel called Mr. Broadway, Mr. Strickler, and Mr. Bernard Broadway, Jr. (the Defendant's brother).

Mr. Strickler noted his experience as a criminal defense attorney since 1984. He testified he had sufficient time (including an almost hour break at the outset of the change of plea hearing), to explain the plea agreement and its consequences to Mr. Broadway. Specifically, Mr. Strickler discussed with Mr. Broadway the maximum penalties of the charges contained in the plea agreement and the consecutive nature of the seven year sentence on the 924(c) charge, which was properly denoted in the plea agreement. Before Mr. Broadway pled guilty, Mr. Strickler also explained to his client on several occasions the application of the guidelines and the potential guideline sentencing range for the carjacking charge. And at some point, prior to the change of plea hearing, Mr. Strickler had also made handwritten notes on a copy of Mr.

Broadway's arrest warrant which indicated the February final pretrial conference date, the March trial date, and the fact that the § 924(c) charge carried a seven year mandatory minimum sentence, while the § 2119 carjacking charge carried a potential guideline sentencing range of 44-51 months (which would ultimately depend on the total adjusted offense level) [Gov't Exh. 12]. Mr. Strickler testified that prior to the change of plea hearing, he had advised Mr. Broadway consistent with his handwritten notations and promised only that he would ask the Court "to impose as low of a sentence as it possibly could".

Thus, it was Mr. Strickler's opinion that when Mr. Broadway entered into the plea agreement and participated in the change of plea hearing, he fully understood the maximum penalties for the charges contained in his plea agreement, the consecutive nature of the mandatory minimum sentence required by the 924(c) charge, and the application of the guidelines with respect to the carjacking charge. And while Mr. Strickler recalled an "understanding" with the government that the sentence on the 924(c) charge was not going to exceed seven years, he never suggested to Mr. Broadway that the total sentence would not exceed seven years, nor did Mr. Broadway indicate to Mr. Strickler that he was expecting a sentence of only seven years.

After Mr. Broadway entered his plea of guilty but prior to sentencing, Mr. Strickler testified that he had sufficient time to review the PSR with Mr. Broadway and to discuss with Mr. Broadway and Mr. Broadway's family the plan to recommend the lowest sentence possible for the carjacking offense. Mr. Strickler admittedly conveyed his hope or optimism, but not expectation, to Mr. Broadway and his family that Mr. Broadway's sentence would be close to the seven years required by the § 924(c) charge, which was consistent with the argument Mr. Strickler posed in his brief sentencing memorandum [DE 59] and the notes Mr. Strickler had

written down to remind him of the sentence he would recommend at sentencing [Def's Exh. 7].

And while his sentencing memorandum did not reference the carjacking count or acknowledge a

possible sentence for that count [DE 59], Mr. Strickler explained that his memorandum reiterated

the point he was hoping to make, which was to ask the Court to use its discretion to impose a

sentence as low as it could possibly go, without any expectation that the total sentence would be

only seven years.  Mr. Strickler confirmed that if he felt that he could have made a

recommendation of "zero" on the carjacking charge, then he would have provided that

recommendation in the memorandum.

     Mr. Strickler then explained that it wasn't until sometime well *after* sentencing that Mr.

Broadway demonstrated great disappointment and almost shock at his sentence, when Mr.

Strickler felt bad for Mr. Broadway and questioned whether Mr. Broadway fully understood the

plea.  As a result, on May 20, 2014, and in an effort to appease him, Mr. Strickler wrote a letter

at Mr. Broadway's request stating:

> I have reservations regarding the question of whether Marquis Broadway fully
> understood all of the components of his case . . . including most particularly his
> comprehension of the plea, presentence and sentencing procedures.  This was due
> in large part to the lack of sufficient time for me to discuss and explain these
> matters with him . . . It was my understanding that the sentence would not exceed
> 7 years and accordingly advised Marquis of the same."

[Def's Exh. 1].  Mr. Strickler acknowledged that the letter did not contain sufficient details, and

that in reality, he had properly advised Mr. Broadway prior to his pleading guilty that the

sentence of seven years was only for the § 924(c) count.  With respect to the carjacking count,

Mr. Strickler reiterated that he had only conveyed his hope that he could identify enough

mitigating factors under 18 U.S.C. § 3553 so as to convince the Court to impose a total sentence

close to seven years.  Mr. Strickler acknowledged that at the time of sentencing he was not

familiar with *United States v. Roberson*, 474 F.3d 432 (7th Cir. 2007)[8], but even so, Mr. Strickler testified that it would have 'flown in the face of all his rational powers' to have suggested to Mr. Broadway that his sentence would not exceed seven years given the consecutive nature of the § 924(c) charge and all of the prior proceedings wherein the proper penalties were identified. Thus, regardless of Mr. Strickler's misguided optimism for a sentence close to zero months on the carjacking charge, Mr. Strickler confirmed that he never promised Mr. Broadway the precise sentence that would be imposed. As with all of his criminal defense clients, he only provided an estimation. Moreover, Mr. Strickler indicated that he never directed Mr. Broadway to sign the plea agreement, rather it has been his practice for thirty years to let his clients decide whether to take a case to trial or to plead.

Contrary to Mr. Strickler's assertions, Mr. Broadway testified that Mr. Strickler advised him that his sentence would be only seven years, and Mr. Strickler provided no explanation that his total sentence could be greater, or that the sentences on both counts had to run consecutively. Mr. Broadway testified that he knew he could get a sentence higher than what Mr. Strickler predicted, although he did not think the sentence would be more than seven years or as high as the ultimate sentence imposed. Mr. Broadway also testified that despite what he said under oath at the change of plea hearing, he did not understand any of the Court's questions because he was only nineteen years old and he simply provided the responses at the advice of Mr. Strickler so the plea would be accepted.

However, on cross-examination, Mr. Broadway acknowledged that he had in fact read and discussed the plea agreement with Mr. Strickler before signing it, that ultimately he wanted to sign the plea at the time, that he voluntarily entered into the plea absent any promises not

---

[8] *Roberson* held that it was error to reduce the sentence on an underlying offense based on the statutorily required mandatory minimum sentence for a conviction under § 924(c).

noted in the plea agreement, and that he was not forced or threatened into pleading guilty. Mr. Broadway then contradicted himself later by testifying that he did not read the portion of the plea agreement that contained his appeal waiver, nor did he discuss the appeal waiver with Mr. Strickler or understand what the waiver meant—despite telling the Court otherwise during the change of plea hearing (again, supposedly following the advice of Mr. Strickler).

Mr. Broadway's brother testified that it was his understanding, based on alleged representations made by Mr. Strickler, that Mr. Broadway would be facing no more than five years' imprisonment if he accepted the plea agreement.

## II. STANDARD OF REVIEW

Section 2255(a) of Title 28 provides that a federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [and] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States,* 366 F.3d 593, 594 (7th Cir. 2004) (citation omitted). Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). If a motion is not dismissed, the judge may direct the parties to expand the record and conduct a hearing after giving the attorneys adequate

time to investigate and prepare. *See* Rules 7 and 8 of the Rules Governing Section 2255

Proceedings for the United States District Courts.

## III. DISCUSSION

Marquise Broadway seeks to vacate his sentence (and at least one of his convictions) under 28 U.S.C. § 2255, which permits a court to vacate a judgment where "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). At the evidentiary hearing, Mr. Wemhoff characterized Mr. Broadway's *Strickland* ineffectiveness claim as a violation of due process, essentially arguing that his plea agreement was not intelligently and voluntarily executed because Mr. Strickler provided ineffective assistance by improperly advising Mr. Broadway that his sentence would not exceed seven years if he pled guilty. However, as further detailed below, the Court finds that Mr. Strickler did not promise Mr. Broadway a sentence of seven years and that Mr. Broadway understood the possible penalties of his plea. So Mr. Broadway's claim fails on the merits whether characterized as one under the Fifth or Sixth Amendment. In addition, the government seeks to enforce Mr. Broadway's appeal waiver, despite a recent change in U.S. Department of Justice policy concerning waivers for claims of ineffectiveness. Thus, the Court first considers the waiver of Mr. Broadway's right to file the instant petition, then addresses the merits of the claim.

### A. Waiver of the Right to File a § 2255 Petition

In this case, the plea agreement's waiver was clear and unambiguous, and it is being enforced by the government over defense counsel's objection. By waiving "any claim of ineffective assistance of counsel" and waiving "any alleged ineffective assistance of counsel" via direct appeal or post-conviction proceedings, Mr. Broadway waived every manner of ineffectiveness claims. *See Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) ("A

defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as part of his plea agreement.") (citing *Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999)). Thus, except for cases in which the plea agreement was involuntary, the district court "relied on a constitutionally impermissible factor (such as race)," the "sentence exceeded the statutory maximum," or the defendant claims "ineffective assistance of counsel in connection with the negotiation of [the plea] agreement", the Seventh Circuit has held that appeal waivers are permissible and enforceable. *Id.*

Although Mr. Broadway indicated for the first time while testifying at the § 2255 evidentiary hearing that he did not read or discuss the appeal waiver with Mr. Strickler and he did not understand what the waiver meant, Mr. Broadway also confirmed that he had told the Court differently during his change of plea colloquy. Mr. Broadway explained that he provided such false responses during his plea colloquy at the direction of his counsel and because he didn't understand the questions. Essentially, Mr. Broadway would like the Court to believe his sworn testimony during the course of the § 2255 evidentiary hearing, as opposed to the statements he made under oath at the change of plea hearing, in order to demonstrate that he did not fully understand the implications of his waiver. However, the Court is unable to do so in this particular case.

Rather, the Court finds that Mr. Broadway is willing to now lie under oath to escape his plea and sentence, and that his testimony at the § 2255 evidentiary hearing was painfully unbelievable. Mr. Broadway often changed his story throughout the § 2255 evidentiary hearing. At one point, Mr. Broadway acknowledged reading the entire plea agreement, but thereafter he incredibly resolved that he hadn't in fact read the waiver provision nor discussed it with his attorney. He also testified that he didn't understand *any* of the questions posed to him during the

change of plea hearing because he was too young, but later Mr. Broadway indicated that he did understand certain identified questions (believing of course that the responses provided to those particular questions wouldn't undermine his § 2255 claims).

The undersigned concludes that Mr. Broadway did understand the Court's questions, and whenever he was confused, Mr. Broadway asked for and received clarification from the Court. Mr. Broadway's testimony at the § 2255 evidentiary hearing with respect to his understanding of the waiver provision not only flies in the face of his more credible sworn statements from the change of plea hearing, but it even contradicts Mr. Broadway's sworn statements at his sentencing, when Mr. Broadway again confirmed without hesitation his understanding of the import of his waiver—representations which were made by Mr. Broadway after the Court had imposed the sentence of 162 months of imprisonment. Additionally, Mr. Strickler's credible testimony during the § 2255 evidentiary hearing further corroborates that the entire plea agreement had been reviewed by him with Mr. Broadway, which necessarily would have included the waiver provision. Ultimately, the Court does not believe that Mr. Broadway provided false testimony at his change of plea hearing and it rejects Mr. Broadway's current inconsistent claims that he didn't understand the import of the waiver provision, whether on account of his attorney's advice, his age, or some other reason Mr. Broadway might fabricate.

Thus, based on the discussion at the change of plea hearing and the record evidence, it is clear that despite Mr. Broadway's recent protestations to the contrary, Mr. Broadway made a knowing and voluntary decision to waive his right to contest his conviction and sentence in an appeal or a post-conviction proceeding. *See Mendoza v. United States,* 755 F.3d 821, 828 (7th Cir. 2014) (noting that credibility determinations are "especially within the province of the district court and can virtually never be clear error") (citation omitted); *Thompson v. United*

*States*, 732 F.3d 826, 829 (7th Cir. 2013) ("a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.") (citations omitted). It simply cannot be said that Mr. Broadway didn't understand the import of the waiver provision, and as a result, Mr. Broadway is bound by his waiver. *See United States v. Smith*, 759 F.3d 702, 706-07 (7th Cir. 2014) ("When the defendant pursuant to the plea agreement has knowingly and voluntarily waived his appellate rights, and the terms of that waiver are express and unambiguous, we will enforce those terms."); *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (indicating that the court will enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement).

The Court acknowledges that a recent change in policy by the U.S. Department of Justice indicates that federal prosecutors should no longer enter into plea agreements containing blanket waivers for ineffective assistance, and should decline to enforce such existing waivers under certain circumstances. [Gov't Exh. 13, Office of the Deputy Att'y Gen., Memorandum for all Federal Prosecutors: Dep't Policy on Waivers of Claims of Ineffective Assistance of Counsel (Oct. 14, 2014) (stating that "[f]ederal prosecutors should no longer seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel . . . [f]or cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve.")]; in a case in which the DOJ Memo was inapplicable as there was no claim for ineffective assistance, *see United States v. Roach*, 600 F. App'x 472, 473 (7th Cir. 2015) ("for existing waivers that would bar a claim of ineffective

assistance, the Attorney General has simply directed that the government should decline to enforce the waiver to block that claim."). However, at least one circuit court has concluded that the DOJ policy does not prohibit enforcement of the waiver on collateral attack. *Demello v. United States*, No. 14-14106, 2015 WL 4663934, at *3 (11th Cir. Aug. 7, 2015). And another circuit court enforced the defendant's waiver to bring a collateral attack for a claim of ineffective assistance, without further discussing how the DOJ's change in policy affected the outcome— now the subject of the pending petition for writ of certiorari. *See Hardin v. United States*, 595 F. App'x 460, 463 n.3 (6th Cir. 2014) (J. White, dissenting), *petition for cert. filed* (No. 15-101) (presenting the question of whether "it [is] permissible under the Sixth Amendment guarantee of right to counsel to require a defendant to waive a possible future claim of ineffective assistance of counsel as a condition in a plea agreement."). Despite the policy announced by the DOJ on October 14, 2014, the government has specifically requested that the Court enforce Mr. Broadway's waiver. The Court has concluded that the waiver is valid on its face and would serve as a bar to this claim, but has insufficient evidence upon which to conclude that the DOJ memo precludes enforcement of the waiver. Regardless, the Court finds that the claim fails on its merits.

**B.      Sixth Amendment Right to Counsel**

Mr. Broadway's claim is brought under the alleged violation of his right to the assistance of counsel, as guaranteed by the Sixth Amendment.[9] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

---

[9] Again, even if characterized as a due process claim, the facts of this case lead to the same result.

The two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). In other words, to prevail on an ineffective assistance claim, a petitioner must establish that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland*, 466 U.S. at 687).

To show deficient performance, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* "This means identifying acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (citing *Sussman v. Jenkins,* 636 F.3d 329, 349 (7th Cir. 2011)). The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

In the context of a guilty plea, a showing of prejudice means that there is a reasonable probability that the defendant would have insisted on going to trial. *Koons*, 639 F.3d at 351; *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006); *Tezak v. United States*, 256 F.3d 702, 712 (7th Cir. 2001). In other words, the prejudice prong focuses on whether counsel's deficient performance was a decisive factor in the defendant's decision to plead guilty rather than pursuing other options. *See Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (citing *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007)). To make that showing, the petitioner must do more than simply allege "that he would have insisted on going to trial"; he must also come forward

with objective evidence that he would not have pled guilty. *Hutchings v. United States,* 618 F.3d 693, 697 (7th Cir. 2010) (citations omitted).

Failure to satisfy either the performance or the prejudice prong of the *Strickland* test is fatal to a defendant's ineffectiveness claim. *Velarde v. United States*, 972 F.2d 826, 828 (7th Cir. 1992); *see Strickland,* 466 U.S. at 687 (reasoning that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

During the § 2255 evidentiary hearing, Mr. Broadway testified that he pled guilty based on the misrepresentation made by Mr. Strickler that he would be sentenced only to seven years imprisonment[10] and that Mr. Strickler never told him that his sentences would run consecutively. Mr. Broadway's brother also testified that Mr. Broadway only entered into the plea agreement because he was told by Mr. Strickler that his sentence would be no more than five years. Of course, Mr. Strickler's letter written over a year after Mr. Broadway pled guilty, also indicates that he had advised Mr. Broadway that his sentence would not exceed seven years [Def's Exh. 1]; however, Mr. Strickler clarified during the § 2255 evidentiary hearing that this letter did not accurately characterize the advice that he actually provided to Mr. Broadway before he pled guilty and was written to appease Mr. Broadway. According to Mr. Strickler, he accurately advised Mr. Broadway as to the maximum penalties and consecutive nature of the charges to which he was pleading, and his advice in this respect was consistent with the terms of the plea agreement that he had also reviewed with Mr. Broadway. Mr. Strickler further discussed with

---

[10] It is true that there was some initial misunderstanding by Mr. Broadway that his sentence on Count 2 would be a mandatory five years' imprisonment, rather than the required seven years' imprisonment since the firearm was brandished. 18 U.S.C. § 924(c)(1)(a)(ii). However, the record makes clear that prior to pleading guilty, Mr. Broadway and Mr. Strickler took the time necessary to discuss and verify that Mr. Broadway understood the application of the mandatory seven year term of imprisonment that applied to Count 2.

Mr. Broadway the application of the guidelines and the potential guideline sentencing range for the carjacking charge. Mr. Strickler was adamant that as with all of his clients, he never promised Mr. Broadway a particular sentence, but rather conveyed an optimism (unlikely as it may have been) to Mr. Broadway and his family that the ultimate sentence could be close to seven years.

The Court would first note that Mr. Broadway and his brother's assertions concerning Mr. Strickler's promise of a seven year sentence (or less, per Mr. Broadway's brother) are simply not credible. For the reasons previously detailed, it was clear that during the course of the § 2255 evidentiary hearing, Mr. Broadway was willing to lie under oath in order to escape his plea and sentence, and his brother was similarly willing to do the same given that Mr. Broadway acknowledges that even he knew five years was not an option. Moreover, in order to believe Mr. Broadway now, would mean that his representations in the plea agreement and his admissions at the change of plea hearing with respect to his understanding of the sentencing consequences were all lies—which the Court does not accept.

Recall that the plea agreement itself clearly stated Mr. Broadway could be sentenced up to fifteen years of imprisonment on Count 1 and that he faced a mandatory minimum of seven years up to a maximum of life imprisonment "consecutive to any other sentence of imprisonment" on Count 2. The plea agreement also made clear that the Court had jurisdiction and authority "to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement." In addition, during Mr. Broadway's change of plea hearing, counsel for the government pointed out that Mr. Broadway could be sentenced up to fifteen years on Count 1 and up to life in prison on Count 2. Mr. Broadway explicitly acknowledged that he understood the potential punishment he faced as a result of pleading guilty.

Further recall that it was made clear during the change of plea hearing that the Court would not be able to determine Mr. Broadway's actual guideline sentence until after the PSR had been completed, upon which he and his attorney could challenge the contents of the PSR. While under oath during the change of plea hearing, Mr. Broadway acknowledged his understanding. The undersigned also advised Mr. Broadway that, regardless of the sentence predicted or pursued by Mr. Strickler, the Court could ultimately impose a more severe sentence, to which Mr. Broadway affirmed that his guilty plea was not in reliance of a particular sentence and he was not relying on any promises made to him other than those contained in the plea agreement. Mr. Broadway's repeated acknowledgements coincided with Mr. Strickler's testimony that he had discussed with Mr. Broadway the consecutive nature of the seven year mandatory sentence on the §924(c) charge and the potential guideline sentencing range for the carjacking charge. Mr. Strickler's testimony in turn, was consistent with his handwritten notes made before the change of plea hearing which reflected his understanding of the potential sentencing repercussions.

Ultimately, Mr. Broadway has provided no believable explanation for overriding his sworn statements made when entering his guilty plea and he cannot create an issue of fact as to his counsel's advice (or as to the voluntariness of his plea for that matter) by simply contradicting these admissions now. As reasoned in *Hutchings*, "[j]ustice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [defendant] to renege on his representations under oath to the district court that there were no promises made to him to induce his guilty plea." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010); *see also, Wyatt v. United States*, 574 F.3d 455, 458-59 (7th Cir. 2009); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (rejecting defendant's claim that his attorney promised him that his federal sentence would be concurrent with his state sentence, and stating "[j]udges need not let

litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.").  In light of the record evidence, including Mr. Strickler's credible testimony that he accurately advised Mr. Broadway as to the consecutive nature of his sentences and never promised Mr. Broadway a particular sentence (let alone promised him a sentence of seven years), Mr. Broadway cannot now believably complain that his plea was based on representations by Mr. Strickler that he would receive a sentence of only seven years.

In concluding, the Court notes again that in his claim Mr. Broadway seeks alternative relief:  to run his sentences concurrently, vacate one of his sentences (and presumably one of his convictions), or allow him to "re-negotiate his plea" [DE 63 at 13].  In turn, Mr. Broadway's attorney originally asked that Mr. Broadway be sentenced to a lesser term, or that his plea be vacated and Mr. Broadway simply be set free with all charges dismissed despite no alleged wrongdoing on the part of the government.  However, defense counsel provided no legal support for such relief, and later acknowledged that the Court would likely be limited to vacating the plea of guilty on both counts and starting from square one with all of the charges contained in the indictment. *See e.g., Julian v. Bartley*, 495 F.3d 487, 500 (7th Cir. 2007) (announcing that where there has been a finding of ineffective assistance of counsel in a § 2255 proceeding, the remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interest" including the competing interest of preserving society's interest in the administration of criminal justice) (citation omitted).  In any event, the failure to show that Mr. Strickler promised Mr. Broadway a sentence of seven years or that Mr. Broadway entered into the plea agreement in reliance on a particular sentence or didn't

understand the penalties is fatal to Mr. Broadway's claim (whether characterized as one under the Fifth or Sixth Amendment). Thus, Mr. Broadway's request for relief under § 2255 must be denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and the Rule permits the Court to hear further argument on whether a certificate of appealability should issue. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quotation marks omitted) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell,* 537 U.S. 322, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

Additional argument is not necessary here because based upon the factual determination made by the Court and absent credible evidence of a promised sentence made to Mr. Broadway or that Mr. Broadway did not understand the consequences of his guilty plea, nothing before the Court suggests that jurists of reason could debate the correctness of the Court's rulings herein,

nor could there be a debate about whether the issues presented deserve further proceedings. As a result, the Court declines to issue Mr. Broadway a certificate of appealability.

The Court advises Mr. Broadway that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises Mr. Broadway that Rule 4(a) of the Federal Rules of Appellate Procedure governs the time to appeal an order entered under the rules governing § 2255 proceedings. *See* Rule 11(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Under Rule 4(a), when the United States is a party in a civil case, any notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) (stating that "the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision").

## V.  CONCLUSION

For the reasons set forth above, the Court DENIES Marquis Kasimir Broadway's § 2255 petition and DENIES the issuance of a certificate of appealability.

SO ORDERED.

ENTERED:  October 27, 2015

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court